**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**GEORGE E. KING,**

        **Plaintiff,**

**v.**                                              **Case No. 6:05-cv-1751-Orl-DAB**

**JO ANNE B. BARNHART,
Commissioner of Social Security,**

        **Defendant.**
_____/

**MEMORANDUM OPINION AND O R D E R**

The Plaintiff seeks judicial review of the denial of his claim for Social Security disability benefits and Supplemental Security Income payments. For the reasons set out herein, the decision is **REVERSED and REMANDED**.

*PROCEDURAL HISTORY*

Plaintiff applied for a period of disability, disability insurance benefits, and Supplemental Security Income in November, 2002, alleging an inability to work beginning July 3, 2001 (R. 57-60, 181-82). The Commissioner denied the claims initially and upon reconsideration (R. 41-44, 49-50, 52-53, 175-77, 179-80,184-87). Plaintiff requested and received a hearing before an Administrative Law Judge ("the ALJ") (R. 218-41). Subsequently, on July 27, 2005, the ALJ issued an unfavorable decision (R. 18-29). On September 22, 2005, the Appeals Council denied Plaintiff's request for review, making the ALJ's determination the final decision of the Commissioner (R. 6-8). This action timely followed.

### *NATURE OF DISABILITY CLAIM*

Plaintiff alleges that he is disabled as of April 1, 2003,[1] due to pain and residuals from "bulging disks in lower back L4 + L5." (R. 65).

*Summary of Evidence Before the ALJ*

At the time of the hearing, Plaintiff was twenty-seven years old, with a ninth grade education and prior relevant work experience as a cook and laborer (R. 221, 71, 222, 77-84). Additionally, Plaintiff was incarcerated from December 1999 to October 2002 (R. 65, 224). While incarcerated, Plaintiff sustained an injury which is the basis of his claim of disability.

The medical record in evidence is set forth in the ALJ's decision. By way of summary, on July 3, 2001, while he was incarcerated, Plaintiff sustained an injury to his lower back (R. 117-19, 121-23). An X-ray of the lumbar and thoracic spine taken on July 5, 2001, found no abnormalities (R. 118), but an MRI dated October 18, 2001, revealed degenerative disc disease at L4-5 associated with disc bulge which was mildly compressive and also contributing to foraminal encroachment (R. 110). A consultant's report described the MRI findings as "very mild [degenerative disc disease] with central disc bulge at L4-5" (R. 104). Plaintiff complained to the prison infirmary of significant pain (R. 99) and was offered a series of epidural steroid injections. Although Plaintiff's counsel states in her brief that he underwent the injections (Doc. No. 13 at 4), Plaintiff testified at hearing that he left prison before they were able to do so (R. 231).

After his release from prison on December 11, 2002, Plaintiff sought treatment at the emergency department of the Osceola Regional Medical Center, complaining of a one year history of lower back pain (R. 143-54). He was noted to be on no medication (R. 146), and rated his back

---

[1] The onset date was amended by Plaintiff from the original July 2001 date (R. 192, 220).

pain a 9 out of 10 (R. 144). Upon examination, he was found to have decreased range of back motion secondary to pain and vertebral point tenderness (R. 147). X-rays taken of his sacrum, coccyx, and lumbosacral spine were normal (R. 153-54). He was diagnosed with chronic low back pain, referred to the health department and to an orthopedist, and given prescriptions for Flexeril and Ibuprofen (R. 147-48).

On January 7, 2003, Plaintiff was seen for initial evaluation by Dr. Marcus Kornberg, an orthopedist (R. 202). On examination, Dr. Kornberg noted that Plaintiff was moderately overweight and used a cane for ambulatory assistance. His lumbosacral motion was guarded, but good. It was noted that Plaintiff experienced pain, localized to the lower lumbar region, on extremes of motion; paralumbar tenderness without buttock tenderness; and had a positive straight leg raise. He was felt to be neurologically intact with symmetrical strength, sensibility, and reflexes. *Id.* X-rays were described as unremarkable. Dr. Kornberg's diagnostic impression was back pain with a sciatic component, left greater than right. *Id.*

On March 13, 2003, at the request of the administration, Plaintiff presented to a consultative examiner, Dr. Charles Grant (R. 155-58). Dr. Grant's physical examination found decreased range of forward flexion of the lumbar spine, positive supine and seated straight leg raise on the left but not on the right, pelvic tilt, loss of lordotic curve, and sacroiliac joint tenderness (R. 157). Plaintiff had normal motor, sensory, and reflex functions and no muscle spasms were noted (R. 158). Dr. Grant found Plaintiff's gait to be "markedly antalgic" and noted that he needs a cane to walk, and complains of pain as he does so. *Id.* Diagnostic impression was back pain, with radiculopathy (R. 157).

A non-examining state agency physician completed a Residual Functional Capacity Assessment on March 29, 2003, and opined that Plaintiff could occasionally lift 20 pounds, frequently

lift 10 pounds, could stand or walk for six hours in a workday and could sit for six hours, with some postural limitations (R. 159-66).

On April 1, 2003, Plaintiff underwent an initial vocational rehabilitation evaluation by Dr. Jose A. Torres, orthopedist (R. 194-95). Upon examination, Plaintiff was tender along the paralumbar and lower sacral area including the coccyx and had mild tenderness along the sciatic nerve, but he had no neurological deficits; negative straight leg raise, no muscle group atrophy, no dermatomal pattern of sensory loss, and no major muscle group weakness (R. 194). X-ray results were unremarkable (R. 194). Dr. Torres opined that Plaintiff would be a good candidate for vocational rehabilitation, opining that he did not feel that Plaintiff's back impairment would limit him severely, assuming that an MRI and a bone scan appeared normal (R.195). He stated that if the studies were normal, Plaintiff's pain complaints were likely resulting from muscle spasms that could be treated with a mild muscle relaxer and anti-inflammatory medication, but that if he did have a herniated disc or a coccygeal fracture, "he may require further treatment." (R. 195).

The April 8, 2003, bone scan ordered by Dr. Torres proved normal (R. 199), but on an April 29th return visit, Plaintiff continued to "complain bitterly" of pain (R. 195), and an MRI was ordered. The MRI, taken on May 19, 2003, revealed a focal right L3-4 herniated nucleus pulposus with disc dehydration and thecal sac deformity, and possible small central L4-5 herniated nucleus pulposus abutting the ventral sac (R. 197). There is no record indicating that Plaintiff returned to Dr. Torres after his May 19, 2003 MRI.

A non-examining state agency physician completed a Residual Functional Capacity Assessment on September 4, 2003 (R. 167-74), opining that Plaintiff could occasionally lit 20 and frequently lift 10 pounds, could sit for six hours and stand or walk for sit hours, with occasional

postural limitations. The examiner noted:: "Apparently MRI done showed bulging disc at L4-5." (R. 168).

Plaintiff began treating with Dr. Michael Ham-Ying on December 3, 2003 (R. 217). At that time, Dr. Ham-Ying noted the May 2003 MRI results, and observed that Plaintiff was tender in the low back. Plaintiff reported his pain level to be a 10 out of 10. Assessment was herniated disc, obesity and elevated blood pressure and Motrin 800 was prescribed. On return visit on January 14, 2004 (R. 216), Plaintiff reported his pain level as 9 out of 10 and reported that he was unable to follow up with an orthopedist yet. Tender lumbar spine was noted on examination, and Bextra was prescribed. Plaintiff was to follow up with an orthopedist "when possible." *Id.*

On an April 7, 2004, return visit (R. 214), Plaintiff's back was "markedly" tender and his back pain level was 9-10. It was noted that he could not afford an orthopedist. Flexeril and Bextra were prescribed, as was a visit to an orthopedist when possible. On return visit on June 30, 2004 (R. 213), Dr. Ham-Ying noted that Plaintiff continued to report that he was unable to afford an orthopedist. His pain level was at 8 and his back remained tender. Ultram and Lortab were prescribed.

On July 16, 2004, Plaintiff returned to orthopedist Kornberg (R. 200-01), complaining of limited tolerance for standing and walking due to pain. On examination, the doctor noted "lumbosacral motion is restricted in both flexion and extension, lateral bending and rotation due to approximately 50% to 60% loss of motion, both in flexion and extension, lateral bending and rotation." (R. 200). A straight leg raise test was positive bilaterally for back pain. Plaintiff had paralumbar tenderness and was positive for considerable hamstring tightness. Neurologically, Plaintiff was intact, with symmetrical strength, sensibility and reflexes involving the lower extremities. Dr. Kornberg reviewed the May, 2003 MRI and concluded that Plaintiff had "primarily

mechanical symptoms secondary to considerable degenerative disease involving L3-L4 and L4-L5 levels." (*Id.*) Dr. Kornberg also stated that Plaintiff had "significant limitation of motion due to chronic inflammation secondary to degenerative disease." (*Id.*) Dr. Kornberg indicated that Plaintiff "has a permanent condition involving the lumbar spine with significant degenerative disease which is likely to result in chronic symptoms and permanent limitations." (R. 201). He emphasized the importance of activity and advised as to proper use of body mechanics.

Plaintiff returned to Dr. Ham-Ying on September 16, 2004 (R. 212). Plaintiff continued to report 9/10 pain levels, and assessment continued to include back pain due to herniated disc. Medications of Flexeril, Bextra, Ultram and Lortab were refilled, and Dr. Ham-Ying completed a Physical Residual Functional Capacity Questionnaire in which he opined that Plaintiff had restrictions that would preclude even sedentary work (R. 207-11). Dr. Ham-Ying indicated that Plaintiff experienced severe, sharp pain in his lower back, and that objective signs of the pain, including tenderness to palpation of the lumbar spine, had been noted. Dr. Ham-Ying opined that Plaintiff could sit less than two hours in an eight-hour day, stand/walk about two hours in an eight-hour day, and lift only ten pounds occasionally. Dr. Ham-Ying also noted that Plaintiff must use a cane to ambulate (R. 209) and opined that he was not a malingerer (R. 208). These limitations had been present since May 2003 (R. 210).

Plaintiff appeared and testified at his hearing, as to his pain and limitations. Plaintiff testified that he has heartburn pain, headaches and back pain "all day, everyday." (R. 226, 229). He testified that he has not considered surgery because he could not afford to see a specialist (R. 230). Plaintiff felt that he could sit for 5 to 10 minutes at most without needing to stand up and move and could stand with his cane for about 15 minutes (R. 232). He stated that he had not even tried to lift "because it

hurts when I bend forward" (R. 233) and that he spends his days laying down and watching television (R. 235). When asked if he felt he could walk outside around the block, he replied " I haven't tried yet, but I should. . . . I just been too lazy to get up and go outside and do anything." (R. 237). No vocational expert testified.

The ALJ determined that Plaintiff had the severe impairments of lumbar disc bulge and chronic lumbar pain with radiculopathy, but that Plaintiff did not have impairments that meet or equal the Listings (R. 25). In determining Plaintiff's residual functional capacity (RFC), the ALJ found Plaintiff's allegations of significantly limiting back pain to be not credible in light of the record. The ALJ discredited the opinions of Plaintiff's treating physicians and accorded great weight to the nonexamining consultants' opinions (R. 25-6). The ALJ found that Plaintiff had the RFC to perform all of the full range of light work, not compromised by any non-exertional limitations, and, applying the Medical-Vocational Rule guidelines, found Plaintiff to be not disabled (R. 28).

### *STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### *ISSUES AND ANALYSIS*

Plaintiff contends that the ALJ's decision was not made in accordance with proper legal standards and is not supported by substantial evidence in that: 1) the ALJ erred in determining that the claimant had the RFC for light work when the treating physician concluded he could not even perform a full range of sedentary work; 2) the ALJ erred by failing to utilize the testimony of a vocational expert; 3) the ALJ erred by improperly evaluating the non-exertional impairment of pain; and 4) the ALJ erred in his credibility determination.

As noted above, the ALJ determined that Plaintiff had the RFC to perform substantially all of the full range of light work (R. 28). According to the regulations, light work "requires a good deal of walking or standing, or … It involves sitting most of the time with some pushing and pulling of arm or leg controls," as well as "frequent lifting or carrying of objects lifting up to ten pounds." 20 C.F.R. § 404.1567(b). Plaintiff contends that substantial evidence does not support this RFC. Plaintiff's contention is persuasive.

As is clear from the determination, the ALJ formulated the RFC by rejecting the opinion of

-8-

Dr. Ham-Ying and by according significant weight to the opinions of the non-examining state agency consultants (R. 26). The record does not support either finding.

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.)

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513,

518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

Here, the treating physician at issue – Dr. Ham-Ying – completed a detailed questionnaire which found Plaintiff to be severely limited. In rejecting this opinion, the ALJ notes that these limitations "appear to be based on the claimant's subjective reports rather than any significantly abnormal findings and thus are not given great weight." (R. 26). This rationale is not supported by substantial evidence. As is clear from the summary above, Dr. Ham-Ying treated Plaintiff over the course of several months and had reviewed Plaintiff's May 2003 MRI that noted the herniated discs. He also noted objective findings (back tenderness) on each and every examination. Moreover, Dr. Ham-Ying was not alone in noting significant objective findings of limitation. The consultative examiner (Dr. Grant) noted limitations in range of motion, a markedly antalgic gait and positive straight leg testing. The two orthopedists that examined Plaintiff also found objective abnormal findings. Dr. Torres noted paralumbar tenderness and Dr. Kornberg found significant restrictions of motion, positive straight leg raising and considerable hamstring tightness. In light of the above, and the May 2003 MRI, the opinion of the treating physician cannot be summarily rejected out of hand, but must be properly evaluated, as it cannot be said to be based on just subjective reports of pain from Plaintiff. As the rationale for discrediting the opinion is not supported by substantial evidence, it cannot be sustained. The case must be reversed and remanded for reconsideration of the treating physician's opinion, in light of the appropriate standards.[2]

Moreover, the Court notes that the two nonexamining consultant's reports that were given great weight did not appear to consider all of the relevant evidence, and therefore are of limited utility. The initial assessment was completed *prior* to the May 2003 MRI and the latter assessment referred

---

[2] The Court does not find that the opinion is entitled to controlling weight, as that is for the ALJ to decide, upon review of the factors set forth in 20 C.F.R. § 404.1527(d), quoted above.

only to the bulging disc at L4-5 (found in the first MRI) and did not mention the herniated disc at L3-L4 found in the May 2003 MRI. As such, the ALJ's reliance on these opinions as a basis of the RFC not only departs from the usual deference accorded treating physicians opinions (which are generally entitled to more weight than a consulting physician's opinion, *supra*), but may have been misplaced, in view of this unexplained ambiguity.

Although the above is reason enough to reverse, the Court also finds merit in the remaining contentions.

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant court perform other work that exists in the national economy. *Foote v. Chater*, 67 F.3d 1553 (11th Cir. 1995). In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines [the "grids"]. *Foote*, 67 F.3d at 1558. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); *Foote*, 67 F.3d at 1559; *Heckler v. Campbell*, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." *Walter v. Bowen*, 826 F.2d 996, 1002-3 (11th Cir. 1987). In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational

-11-

expert. *Foote*, 67 F.3d at 1559. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations. *Foote*, 67 F.3d at 1559.

Pain is a non-exertional impairment. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly

articulated credibility finding with substantial supporting evidence in the record. As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Here, the ALJ found that Plaintiff had the severe impairments of lumbar disc bulge and chronic lumbar pain with radiculopathy, but discredited Plaintiff's allegations of pain and no vocational expert testified. Error is evident. The allegations of pain were discredited "in light of the record in its entirety and specifically the findings of mild lumbar degenerative disc disease from more than one orthopedic examiner." (R. 25-26). The Court cannot agree that the record "in its entirety" supports this conclusion. As noted above, while reports *prior* to the date of onset may have indicated mild disease, the orthopedic physician (Kornberg) who treated Plaintiff post-onset did *not* conclude that Plaintiff's disease was mild, but rather stated that he " has a permanent condition involving the lumbar spine with *significant* degenerative disease which is likely to result in *chronic* symptoms and *permanent* limitations." (R. 201 [emphasis added]). Even Dr. Torres, who initially felt Plaintiff was a candidate for Vocational Rehabilitation, conditioned his findings on negative studies. The subsequently ordered MRI could not be interpreted as a negative study. Thus, the rationale offered by the ALJ is not supported by substantial evidence.

The ALJ also referred to Dr. Kornberg's comments encouraging increased activity and Plaintiff's testimony that he was not motivated to exercise, as a basis to discredit Plaintiff's allegations of pain and limitations. The Court fails to see the connection. Dr. Kornberg's comments were contained in the same treatment note that found Plaintiff to have a "permanent condition involving the lumbar spine with significant degenerative disease which is likely to result in chronic

symptoms and permanent limitations." (R. 201). Plaintiff's testimony regarding being "too lazy" was directed to walking around the block. The ability to walk around the block is not the equivalent of the ability to perform and sustain substantial gainful work activity. The matter must be remanded for proper application and evaluation of the pain standard. Assuming the ALJ determines that Plaintiff does, indeed, suffer from pain, the ALJ must evaluate the effect of that pain. If the ALJ finds the pain to be limiting, but not disabling, he must so state and a vocational expert should be retained to evaluate the occupational effects of the limitation.

### *CONCLUSION*

The administrative decision was not made in accordance with proper standards and is not supported by substantial evidence. It is therefore **REVERSED and REMANDED** for additional consideration of the record, and, if appropriate, further record development with respect to the impact of Plaintiff's pain on his vocational abilities. The Clerk is directed to enter judgment for Plaintiff accordingly and to close this case.

Done and Ordered at Orlando, Florida, this 23d day of January, 2007.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record